the United States, for the district where the fine is incurred or in any other court of competent jurisdiction, the same as before. The change made is, by adding the provision as to taxes, that suits may be brought in the district where the liability for the tax is incurred or in the district where the defendant resides. Now if the purpose of this amendment had been merely to allow the United States to sue for a tax in the district where the liability was incurred, that purpose would have been well expressed by simply providing that the suit may be brought in that district. The language being in form permissive only, the United States would seem not, by that language, to be restricted from suing in any other district in which, by the existing law, it could already sue, namely, the district where the defendant resides or the district where he may be found; and if it was the purpose of this language, as claimed on the part of the United States, to confer a new right as to the place of suit, the words "or where the party, etc., resides," are wholly unnecessary and unmeaning. They are unnecessary because the right to sue thus conferred already existed; they are unmeaning because the existing alternative right to sue thus referred to, if it be supposed that it was intended to express by these words the existing alternative right, is only half expressed by the language used. The words are not apt nor broad enough to be supposed to have been used ex majore cautela to guard against the possible construction that the liberty to sue in the district where the tax accrues was intended to be exclusive, and the only place in which suit could be brought, and so that these added words were intended to save existing rights to sue. This is obviously not the intention, because the words used plainly express a distinct part and only a part of the existing right as to the place in which the suit may be brought, that right as then existing embracing, besides the district where defendant resides, the district also where he may be found. But words thus introduced into a statute, particularly by way of amendment, must be held to have been deliberately used and to have some force and meaning; and the only construction that can be put on these words, as it seems to me, to give them any sensible meaning or application, is that they are restrictive, limiting the right to sue to the district where the defendant resides, and the district where the tax accrues,—that they were intended to regulate the whole matter of the place of such suits. It seems impossible to give the words any proper force or to account for their being introduced into the statute on any other theory. Further support is given to this view by the juxtaposition of the two provisions, one as to fines, the other as to taxes. In the one the language used in the alternative to the new right given, is "any other court of competent jurisdiction," which includes the district where the offender can be found. Immediately follows the provision as to taxes. And different language is used for a similar alternative provision. It must be assumed that this difference of language was intended, and that the purpose had in view in using the expression employed as to suits for taxes would not have been effected by using the same language adopted as to fines. Such marked differences in language used for a similar purpose in the same act and the same section, cannot be held to have been accidental.

Moreover, it may well have been thought that the privilege given to the government to sue for a tax in the district where the tax accrues, and in the district where the defendant resides, afforded ample and convenient means of collecting the tax, and that it was unnecessary to preserve the right to sue, also, in the district where the defendant may be found. There seems to be nothing unreasonable in this arrangement as to suits for taxes, while as to suits for fines, penalties and forfeitures it has been thought wise to preserve to the government all existing rights to sue, while specially granting the new right to sue where the fine, penalty or forfeiture was incurred.

These provisions of the act of 1866 were embodied in sections 732 and 733 of the Revised Statutes with a change of form, but hardly of substance, as to suits for fines. Section 732 provides that suits for fines, etc., may be brought in the district where they accrue or in the district where the offender is found. And by section 733, as above cited, suits for taxes may be brought in the district where the tax accrues, or in that where the defendant resides. Thus the revisers appear to have indicated their understanding that the distinction in the act of 1866 was an intended difference in the two cases, by preserving the same distinction of language in the revision. Certainly this re-enactment detracts nothing from the reasons in favor of holding that the words were used in a restrictive sense in the act of 1866. And the presumption is against any change being intended by the substantial re-enactment of these two clauses taken from that section of the act of 1866, in these two sections of the Revised Statutes.

Demurrer overruled and judgment for defendant.

---

UNITED STATES (NEW YORK RECTIFYING CO. v.). See Case No. 10,214.

---

## Case No. 15,875.

### UNITED STATES v. NICHOLLS.

[4 Cranch, C. C. 191.] [1]

Circuit Court, District of Columbia. Dec. Term, 1831.

GUARDIAN — ACTION ON BOND — LIABILITY FOR MONEY RECEIVED IN ANOTHER JURISDICTION—DECLARATION.

1. A guardian appointed by the orphans' court of the county of Washington, D. C., is

[1] [Reported by Hon. William Cranch, Chief Judge.]

liable, upon his bond given here, for money received by him in Maryland, for the use of his ward.

2. In an action upon a guardian's bond for not delivering up the property of the ward agreeably to an order of the orphans' court, it is not necessary to set forth in the breach all the grounds and reasons of that court for making the order; nor all the facts which would justify such an order.

This was an action of debt against the defendant as surety for John H. Beale, in his bond as guardian of Anne Lee Beale.

The declaration recited the bond with its condition, and assigned two breaches: (1) In not paying over to David Butler, Jr., who had been appointed guardian in his place, the sum of $288.87 due by him to his ward upon the settlement of his guardianship account to that time, the orphans' court having revoked his letters of guardianship and appointed the said Butler in his place. (2) In not delivering up and paying over to the said Butler $150 received by the said Beale for rent of the said Anne L. Beale's share of the rent of land in Calvert county in Maryland, according to a like order of the said orphans' court.

At the trial of the cause on the 24th of December, 1831, the defendant took a bill of exceptions, which stated that the plaintiffs, to support the issue on their part, offered in evidence to the jury an account of the said J. H. Beale, as guardian of the said Anne L. Beale, showing a balance of $288.87 due by him to his ward, and one of the items charged to him was the sum of $151.88 for "his ward's proportion of the interest on $12,656.09 (being an undivided legacy from the late Dr. William Potts in the hands of his executor,) for one year." Whereupon the defendant's counsel offered evidence to show that the said Dr. William Potts died in Frederick county, in the state of Maryland, and that Richard Potts of the said county and state, is the executor referred to in the said account; and also produced the will of the said Dr. William Potts. And thereupon prayed the court to instruct the jury that the defendant was not liable upon this bond on account of any moneys received by the said J. H. Beale, unless the same was received by him as guardian of his said ward on account of lands of the said ward lying in Washington county in this district, or from a personal estate of a deceased intestate or testator, of which estate administration hath been granted in the same county.

But THE COURT (CRANCH, Chief Judge, absent) refused to give the instruction, and the jury found a verdict for the plaintiffs, for the $288.87, with interest.

Key & Dunlop, for defendant, then moved for a new trial and in arrest of judgment; and contended that the said J. H. Beale, the guardian, was not liable here for money received in Maryland. That he had no right to receive his ward's money in Maryland, and Dr. Potts' executor had no authority to pay it to him, and is still liable to her for

the same. That he could only discharge himself by payment to a guardian appointed in Maryland. That the first breach assigned is bad. It ought to have shown that the money was received on account of lands or estate in this county. That the bond only covers what he had a right to receive; and that he had no right to receive money out of this district. That the breach assigned ought to show the authority of the orphans' court to remove Beale from the guardianship, and to appoint Butler in his place. The only case in which the orphans' court can remove a guardian, is where he refuses to give new security when required by the court. Neither breach shows any such refusal, or any other ground for his removal. That court is of limited and special jurisdiction, and all the circumstances which will justify the removal ought to appear upon the face of the proceedings.

Mr. Hellen, in reply, was stopped by THE COURT, who said they would hear him if they should think it necessary.

THE COURT (MORSELL, Circuit Judge, contra), overruled both motions.

MORSELL, Circuit Judge, thought the breach bad in not averring that Beale had refused to give new security.

[See Case No. 15,876.]

## Case No. 15,876.

### UNITED STATES v. NICHOLS.

[4 Cranch, C. C. 290.] [1]

Circuit Court, District of Columbia. March Term, 1833.

GUARDIAN — ACTION ON BOND — LIABILITY FOR MONEY RECEIVED IN ANOTHER JURISDICTION —REVOCATION OF AUTHORITY.

1. A guardian appointed by the orphans' court for the county of Washington, D. C., is liable to account there for money received by him for his ward in Maryland.

2. A guardian, whose authority is revoked, is bound by his bond to pay over the money in his hands to the person appointed by the orphans' court to receive it, although the person so appointed had not given bond as guardian.

Debt against a surety in a guardian's bond.

The condition of the bond was that the guardian should faithfully account with the orphans' court as directed by law; and should "also deliver up the said property to the order of the said court, or the directions of law," &c. The declaration averred two breaches of the condition of the bond: (1) By not paying a balance in his hands of $78.87 to David Butler, according to the direction of the orphans' court; the said David Butler "being" appointed guardian in the place of John H. Beall, whose letters of guardianship were revoked. (2) By not paying to the said David Butler, according to the directions of the orphans' court, $150 which the